guilt from the beginning of this case all the way through sentencing. As soon as officers questioned Mr. Nunez after searching his home, he admitted to being a felon and possessing the shotgun they found in his closet. Later, with the government, he stipulated to the remaining factual elements of the charge against him, the convictions, the felony convictions that he had, and the fact that the gun had been manufactured in Connecticut and traveled to interstate commerce down in the Permian Basin. He didn't stipulate to the possession, the presence of the gun? He did not stipulate with the government to the presence of the gun, but he admitted to that fact to the officers, and during the probable cause hearing, as I mentioned in our brief, his attorney had, on cross-examination, had the interviewing officer confirm that Mr. Nunez had admitted to the possession of the gun. Mr. Nunez never denied his factual, or never challenged his factual guilt before the court. He didn't challenge it at that probable cause hearing. He didn't challenge it at his motion to suppress. Are you arguing for all three points, reversible error not to get all three, or just the first two? On acceptance of responsibility, are you saying that your client was entitled to all three points, or just the first two? No, sir. He was only, Your Honor, he was only entitled to the two points under subsection A,  And that's really a question of was there remorse. It can't be put the government to its trial evidence, you agree, and then decide it looks pretty bad, and then want the credits. It's got to be on the record somewhere, your client saying, I'm remorseful. I accept responsibility for this crime. And so if you agree with that, where would you point to that he ever said, I'm remorseful about doing this crime? He very clearly stated his remorse several times. What's the first time that he? The first time he stated it was before, after the admonition by the trial judge that he was unlikely, under the trial judge's policy, to get acceptance of responsibility. He said at that point that he wished to plead guilty because he had done wrong. And then later at the sentencing hearing, he said, Roa, 280, During the bench trial, you know, I realized with my family being there today, too, whether I had any grounds for, you know, on the Fourth Amendment case, the fact that I did have an illegal, the fact I did have an illegal firearm in my house, I knew about it, and leaving this behind me is all I'm trying to do is to ask for remorse. But he didn't ever say with counsel, I want to do a conditional plea. All I've got is a Fourth Amendment. Your Honor, I apologize to the court. In my briefing, I realized I didn't understand exactly what a conditional plea required. During preparation for oral argument, it became clear to me the requirement of a conditional plea that is there must be an adverse determination of a pretrial motion. And you're saying you never had that? There was no adverse determination of a pretrial motion because the motion to suppress was carried with the trial. So you're apologizing that you didn't affirmatively ask for that? I'm apologizing that I didn't point that out in the brief, that he could not. He never had the chance. He could not have asked for a conditional plea. He could not have requested or received one because he simply didn't meet the requirements, under this special exception under Rule 11 where one can get a conditional plea, that he needed first an affirmative adverse decision of a pretrial motion. He didn't get that. Now, why was that not possible for him? In anticipation of his counsel filing a suppression motion, the government asked that any suppression motion be carried with it to trial. And Mr. Nunez's attorney, in his suppression motion, asked for a separate, after that suggestion was made by the government, asked for a separate pretrial hearing on his motion to suppress. The court denied that, that separate pretrial hearing, and set them both for a joint suppression hearing slash bench trial. And that's how it's set out in the order. Now, these are pretty rare when the court carries a pretrial motion with it to a trial, a bench trial. And the reason it's pretty rare is because Rule 12 essentially mandates that court rule on pretrial motions before trial. And the magistrate here just explained it's not rare there because it's PECOS. Is that how you pronounce it, PECOS? PECOS. Right. Is that how you pronounce the district? PECOS. Anyway, they have these unusual procedures, because I agree, I was startled, because the dockets are congested. They just have to run people through. So, therefore, the magistrate's got this plea deadline, right? There was a plea deadline imposed by the magistrate. There was a, in the scheduling order, there was a plea bargain deadline. Okay. Everybody referred to it as the plea deadline. This is a little bit different than the case Starling, which the government cited in their brief. In that case, if you were to go to Tab 3 of the record excerpts in that case, you would find the same judge, but you would find a different scheduling order, which had a must-plea-by deadline. Regardless, everybody understood, the judge, the magistrate, counsel, that this plea bargain deadline was the plea deadline. So, basically, here's your argument. You didn't have an opportunity to conditionally plea, nor did you have any opportunity, the government moved, to get it collapsed to trial, so you couldn't do it before they were put to their burden at trial. Yes. And, therefore, what is your best case that we would vacate and remand the sentence for giving him the two points under 3C, whatever, 3E1.1? If that's your argument. Is that your argument? If it is, what's your best case that we have to vacate and remand? My argument is that it's difficult to find a best case because, in a case, in a recent Fifth Circuit opinion, 2019, cited by neither of the parties, an unpublished opinion, Marino, 760F Appendix 266. The court panel in that decision suggested that this court has not decided the question of whether a late guilty plea can be the sole basis for a denial of responsibility. You didn't skid that to us. Opposing counsel doesn't have it, but it's unpublished. So what's the closest published opinion? Where would we look for guidance? The closest published opinion of this — I would say the closest published opinion would be the Hollis opinion, the Sixth Circuit opinion. That's not an opinion of this court. But the Hollis opinion, which is mentioned in the Marino opinion, does set out this problem of conflating the subsection B consideration of permitting the government the opportunity to not have to prepare for trial and the court's management docket with the subsection A demonstration of responsibility section. The sentencing guidelines itself sets out these guideposts, and the guideposts it sets out for demonstrating acceptance of responsibility don't have anything to do with managing the docket. Now, admittedly, this is a difficult area of the law for the court, because what the sentencing guidelines are trying to do is they're trying to provide a benefit for people who accept responsibility to plead guilty, but not a trial penalty. And Mr. Nunes, because he never denied his factual guilt, accepted responsibility under subsection A. You accept that our standard of review is extremely deferential? It's extremely differential. However, in this case, the court committed legal error by basing its decision on an irrelevant factor, and that factor is the subsection B factor of management. That is the legal argument. I didn't see that as prominent. Now, I understand that, and that is interesting, but we have a lot of law that seems to go beyond the A-B distinction, and it seems to require timeliness even to get the two points under A. And Diaz makes that the 1994 case of this court says timeliness is a consideration that this court can look at. But going back to the guideposts of the guidelines, note 6 of the guidelines says that timeliness is a consideration under both subsections, but it is context-specific. And the context here is in subsection B is the notification early enough. That's the efficiency congestion one, that third point. Yes. The first two are just remorse. Yes. Exactly. Okay. And Mr. Nunes clearly expressed remorse. There's no finding, there's no suggestion on the record that by the court that Mr. Nunes was not remorseful. The basis for the court's decision, its rationale, which was given at row 277, was first this rationale, which the Washington case rejected, that 276, the Washington case rejected, and the government does not argue that you could have walked. The other rationale here, that efficiency rationale, at row 277, wanting to encourage people to make timely decisions so that we can manage the docketed sentencing, that rationale is a relevant consideration. And did you argue that below? Yes, I did. That's a very important point. You make the legal objection that the first two points have nothing to do with court efficiency and timeliness. Did you make that argument? The argument was not made below. However, there was an objection below, both a written objection and objection at sentencing, that based on the conduct that Mr. Nunes had manifested. I guess the government's arguing the best light. They're about to do it, but they'd say, well, your standard review is without any foundation, and yet your client put the government's witnesses on the stand. He didn't plead guilty. He didn't conditionally plead. They went all the way to a trial, and then a bunch of witnesses testified, and then he said, okay, I'm out. That was the only way for him to preserve, Your Honor, this challenge to the suppression motion. And he did not have that opportunity. And it's really the district court's policy or practice really is a perverse incentive not to plead guilty. It's the judge admonished Mr. Nunes, essentially, tell him to take the hint that you're not going to get acceptance of responsibility because it's too late. But you didn't object that that was improper under Rule 11, right? That, to me, looks very improper for a judge to say you don't plead now, you don't get the credit. That's violating, to my eye, Rule 11C. But no one objected and said you can't say that, Judge. The judge didn't categorically say I will not. The judge says it's off the table. He said he would consider it. However, it was very clear to both, to Nunes' counsel. Nunes' counsel took the hint, and he recommended to his client, he put that in the record, that he should proceed. Even though Mr. Nunes wanted to plead guilty at that point. This is not something that's part of the guidelines or its application notes. And Mr. Nunes expressed the contrition. The government, in its brief at page 17, admits that he engaged in conduct that demonstrated acceptance of responsibility. But this, excuse me, my time is up. Good morning, Your Honors. May it please the court, counsel. It's been a very long time since I've been before this court, and I'm very pleased to be here and appreciate you giving me this opportunity. Judge Higgison, you've written a lot on this topic of whether acceptance of responsibility is properly denied. And what might be argued as similar circumstances, Judge King and Chief Judge Richman have also written quite a bit on this topic. We may have written too much. I don't know, Your Honor. The court has clarified, I think, increasingly what can and cannot be done. Here, I think the court does not really need to go beyond what is the issue of timeliness. And whether or not the court properly – timeliness was a proper basis for denying acceptance of responsibility here. But if the court chooses to go beyond that, then cases like Washington and O'Hara are very distinguishable here. So you're saying we could resolve it just saying the very fact he went to trial is foundation for denying him the acceptance of responsibility. Is that the first argument? The first argument is, Your Honor, that the guidelines expressly allow courts to deny acceptance of responsibility on a consideration of timeliness. And this court has – I'm sorry to say that, but I guess his point that's sort of coming up more now has some appeal. Is that true for the first two points? Or is that really only the third point that ties to congestion and efficiency? So, Your Honor, this court – in fact, Judge King has written on this point in outlaw. And I can provide the citation to this court shortly. It's at council table. But in outlaw, Judge King very clearly explained the difference between those two issues. The first, 3E1.1a's two-point award based on timeliness is – Okay. Tying it to timeliness. Tying it to timeliness is in the nature of an expression of contrition, remorse. The B1 and B2 timeliness considerations, as explained in that opinion, are very clearly tied to consumption of resources. But then he points to the record and says this fellow was apologetic throughout, frankly. Even to the point, almost embarrassingly, at sentencing. Remember, he says, I'm sorry I brought this all up. I'm really sorry I'm wasting your time. It seems to be a defendant who just from start to finish didn't want to contest it. He was sorry, but under legal advice he was told there may be a suppression issue. I don't think that's necessarily an accurate characterization of the record. A full reading of the record reveals, Judge, that Mr. Nunez, yes, he confessed when the officers searched his residence. He didn't confess to possessing the firearm. Instead, he admitted he owned the firearm. He admitted that he had fired the firearm. He admitted that he had purchased ammunition for the firearm. All evidence that can be used to determine possession. But he went forward with a probable cause hearing. That's fine. A PC hearing. There's no issue. You're saying he went forward with a suppression hearing. He went forward with a probable cause hearing. And I'm not arguing that acceptance should be denied on the basis of that. I'm simply pointing out that Mr. Nunez has, from the beginning, been contesting the evidence against him. When did you give him the affidavit that even allowed him to construct a motion to suppress? It was pretty darn close to the magistrate's plea deadline. I believe, Your Honor, that the record reflects that on July 13th, which was, yes, a few days before the plea deadline, the plea bargain deadline as counsel refers to it as, but counsel indicated that he had everything he needed and continued to, on that day and on the 16th, indicate that his client wanted a trial. On the 16th, there's a very clear discussion about the fact that the defendant indicated he understood that and expressed a desire, nonetheless, to proceed to trial. The district court then had its own status conference, and the case continued. That was, I believe, on July 23rd. The case continued in a posture for a trial. On that day, the 23rd, it was the government who indicated that there had been some discussion of a suppression motion and that it would speedily respond once that was filed, and all of that did occur. But the defendant and the government suggested that the suppression could be carried with the trial. But in the context of this record, Your Honor, it's clear that the defendant wanted a trial. He stipulated yes to certain evidence, but not to his knowing possession of the firearm. He stipulated to the characteristics of the firearm, its travel in interstate commerce, and had he truly wanted to just suppress the fruits of the search, he wouldn't have stipulated to the firearm itself. But even if he wanted simply to preserve his right to appeal, he could have entered into a stipulation that stipulated to all of the elements of the offense and preserved his right to appeal the issue, stating as much in the stipulation itself. He didn't do that. He didn't ask for, there's no evidence that he engaged in a type of plea bargaining that would have been designed to secure a conditional plea. There's no evidence that he requested that, and this idea that he couldn't have requested that. But if the government moves to have the suppression hearing at trial and the court grants that government motion, when does he have the opportunity to get an adverse decision to then say, okay, I'll conditionally plea, take up just the Fourth Amendment issue? He could have objected to that. He did not object to that at the time of that hearing on July 23rd. July 23rd, is that the date of the magistrate's plea deadline? No, Your Honor, that was on July 16th. July 23rd, the hearing was before Judge Counts, and it was then that there was the discussion about carrying the suppression issues with the trial due to the overlap of the evidence. The defendant didn't object then. He did, in his motion, subsequently filed, request a hearing. He doesn't object when he files a motion. Was the motion denied for the hearing? Well, it was not explicitly denied. Instead, the case was set for a bench trial and a suppression hearing. If this court chooses to consider that a denial, I would point out that once the case was called for trial, he did not object to then the fact that the hearing, the suppression hearing, was going to be carried with the bench trial and could certainly have done that. Instead, what he did was point out that whatever evidence was developed in support of conviction that could be suppressed by the court should not be admitted for purposes of guilt innocence and preserved his right then to . . . Can you describe my own opinion to me? Is this position of the government consistent with NAHARA? So in NAHARA, Your Honor, you will likely recall that in NAHARA there was a suppression hearing, and then subsequently there was a trial. The government there itself advised the court that the only reason for the trial was to preserve the ruling on the suppression motion. The government put on evidence through a stipulation and through a videotape of a material witness deposition. The defendant didn't challenge that evidence in any way, and then a finding of guilt was entered. Here, the government made no such representation that that was the purpose for this bench trial. The government called a witness. That witness was fully cross-examined, called another witness, and that's when a break occurred. In NAHARA, there was essentially a stipulation of all of the facts relevant for guilt innocence. NAHARA had simply challenged the basis for the stop. Here, Mr. Nunez was challenging the search of his residence, but also challenging the truthfulness of the assertions within the warrant and was effectively attempting to challenge those assertions through cross-examination. The last question for me is, I mean, it is entangled, I think, more from our case law and mine included, but this case was unique to my eye because of that magistrate-set pretrial deadline and then the commentary to Mr. Nunez that it's likely that you will lose points if you don't plead now. Do you agree with me that that's in a lot of tension with the prohibition on judges entering or affecting the plea bargaining? I do not, Your Honor, because if the court would read the transcript in its entirety, it would see that the judge gave greater context to those statements. The judge indicated, and I don't have a great command of that point, Your Honor, since I wasn't focused on the question of whether the court injected itself into plea bargaining, but the court said, look, you can go to trial and you'll walk out of here and there will be no question about sentencing. If you choose to instead proceed to trial and are convicted, then there will be a question of sentencing, and in this court it's highly unlikely that you'll receive acceptance or responsibility if you enter a plea past the deadline of this court and proceed to trial. But you see the problem with that, don't you, I mean, as a systemic matter? If a judge decides, you know, I'm going to carry every suppression motion with the trial and you're going to lose your acceptance of responsibility, that's meaning you're not really getting a meaningful hearing on the motion to suppress and it's contrary to the rules. Well, Judge, I think that there are a number of things here that could have happened that would have preserved the defendant's right to preserve the suppression and receive properly a benefit for acceptance of responsibility or really stated reversely that would have made the court's determination to deny acceptance without foundation. Here the court has expressed the foundation was set forth, of timeliness was set forth in the PSR. The judge adopted the PSR. Defense counsel who had the burden in the district court and now has the burden. I'm sorry, Judge. If I'm not out of heart, I'm understanding if a conditional plea is so easy. Why didn't that happen here? Your Honor, there's no evidence in the record that defense counsel engaged in that kind of bargaining with the government. The only reference to a plea agreement, it was an opportunity for the defendant to plead to the indictment, thereby preserving essentially his right to appeal his sentence. But there's no evidence that he requested any sort of arrangement that would have preserved the right to challenge the search of the residence and position himself to receive acceptance of responsibility in a more clear fashion. But, Your Honor, on the 16th and the 23rd, the defendant expressly indicated that he wanted a trial. There was, and as Judge Higginson remarked, at the sentencing hearing, while defense counsel did predicate his contention that the defendant should receive acceptance of responsibility simply because all he was doing by going to trial was trying to preserve his suppression, the defense never addressed the question of the lack of timeliness. Instead, at prior hearings, defense counsel had essentially agreed that timeliness was likely to result in the defendant's denial of acceptance of responsibility. The defendant expressly acknowledged that. And during the mid-trial plea, the judge admonished the defendant that even if he entered this plea of guilty, he was unlikely to receive acceptance of responsibility. And the defendant said he understood and he still wanted to go forward with the guilty plea. That's akin to a waiver, this repeated colloquy about the effect of his conduct in consideration of whether or not a guilty plea would warrant acceptance of responsibility in the facts and circumstance of this case. Mr. Parenti makes the best argument that I think he can, Your Honor, but he doesn't effectively address the timeliness, which is a proper basis for the decision. And even on the question of him proceeding on the motion to suppress, this case is more like Maldonado than it is Washington and Najera. And in Maldonado, this court in 1995 denied or affirmed the denial of acceptance of responsibility on similar facts. Your Honors, if the court has no further questions of the government, I'll provide my time back to the court. Thank you. May it please the court. One factual error, one factual thing about the record I want to clarify. Mr. There was, after that suggestion on July 23rd by the government that the hearing should be carried with the bench trial, on the July 25th in Mr. Nunez's motion to suppress, he specifically requested a motion, a hearing on this motion, and that after a hearing on this matter, defendant requests the following matters be suppressed at trial. And so essentially he objected to that suggestion that the government made in anticipation of a motion to suppress. Couldn't he at that point have said, let's just have a suppression hearing. If I lose, I will plead guilty. Essentially a conditional plea. Why couldn't he have said at that point, the only thing that we need to try is a suppression motion. If you rule against me, I mean, I will plead guilty. But to preserve just that issue, I mean, why didn't that happen? I've looked carefully through the case law, and I can't find a conditional, conditional plea. That Mr. Nunez would have first had to have that adverse ruling on the motion to suppress before he could have had this conditional plea. And he didn't have that. So that avenue, that very narrow exception to how guilty pleas take place was closed off to him because there wasn't a pretrial ruling on the motion to suppress. The idea that Mr. Nunez wanted to go to trial, that he had said that at the July 16th plea bargain deadline status conference, the record is a little bit muddled on this, but at that same hearing, the government's attorney took pains to mention that there had been lengthy discussions with the magistrate court about Mr. Nunez's intention to plead guilty. Not to plead guilty, but to file a motion to suppress. And those discussions aren't docketed on the record. It's not clear when they happened, but they appear to have happened before that plea bargain deadline. So it wasn't a surprise that Mr. Nunez needed to go to trial in order to preserve that issue. And once he was at trial, in row 181, his attorney, before any evidence was admitted, said to the fact finder, the trial judge, I'm making the same comment to all the evidence. My client's primary reason for this hearing is his motion to suppress. Legally, the way to get these points is to do a conditional plea. Legally, but it requires an adverse decision from the district court, which it didn't want to give you, and the government's got to consent, but the government didn't want to consent. Or is the correct answer you never asked the government to do a conditional plea? I believe the correct answer is that it wasn't possible to preserve his error, to preserve this constitutional challenge and proceed to trial. Now, Washington does say, opinion of this court, that filing a motion to suppress and continuing to trial, there's no per se prohibition against that, and essentially that's what happened in this case. One thing I think differentiates lawyers from non-lawyers is we try to read every word. And if one goes back to the application notes and looks where it says in note six that timeliness of acceptance of responsibility is the consideration under both subsections, then there's a comma and it's, and is context specific. The context here is whether or not Mr. Nunez expressed contrition, or under subsection A, under subsection B, it's whether or not Mr. Nunez notified the court early enough so that the government didn't have to prepare for trial and the court could manage the stocking better. Thank you. Thank you. Thank you. Mr. Prenti, I know you're court-appointed. We very much appreciate your service, and you've done an excellent job for your client. Thank you. Thank you.